(No. 37840.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELVISTON McKINNEY, Plaintiff in Error.

*Opinion filed September 29, 1964.*

FRED P. BOSSELMAN, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and LESTER A. BONAGURO, Assistant State's Attorneys, of counsel,) for the People.

. Mr. JUSTICE DAILY delivered the opinion of the court:

The principal question presented in this case, wherein we have consolidated appeals from a judgment of conviction and an order denying post-conviction relief, is whether the prosecution knowingly permitted the use of perjured testimony to secure the conviction of defendant, Elviston Mc-Kinney, for the crime of armed robbery. If the charge be true, it is incontrovertible that defendant's trial lacked the fundamental fairness implicit in constitutional guarantees of due process of law, thus entitling him to a new trial. *Napue* v. *Illinois,* 360 U.S. 264, 3 L. ed. 2d 1217; *People* v. *Lueck,* 24 Ill.2d 554.

During the early morning hours of December 19, 1961, Carl Carter was held up on the streets of Chicago and robbed of $242 by an armed man who had an accomplice waiting in a nearby car. Defendant and one Edwin A. Davis were subsequently indicted for the crime and, on June 12, 1962, Davis pleaded guilty and was sentenced to the penitentiary for a term of two to eight years. On this occasion the People were represented by assistant State's Attorney Morton Siet. The defendant, who pleaded not guilty, was brought to trial before a jury in the criminal court of Cook County on July 10, 1962. Davis did not appear as a witness against him and the jury was discharged when it could not·agree on a verdict. The prosecutors on this occasion were Siet and assistant State's Attorney Victor Ciardelli.

Fifteen days later, on July 25, defendant was tried a second time before a jury. At this trial Davis appeared as a witness for the prosecution and testified that he and defendant had committed the robbery. Based upon Davis's testimony, as well as that of the complaining witness and police officers, defendant was found guilty and sentenced to the penitentiary for a term of five to fifteen years. Siet had gone on vacation and the prosecutors at the second trial were Ciardelli and assistant State's Attorney Arthur Zimmerman.

When Davis was cross-examined by defense counsel, he admitted that he had previously entered a plea of guilty and received a sentence of two to eight years for his participation in the robbery, and testified in response to direct inquiries by counsel: (1) that nobody had offered him leniency if he would testify against defendant; (2) that he had "had no conversation at all" with officials from the State's Attorney's office; (3) that he had decided to testify against defendant of his own volition; and (4) that he expected no leniency in return for his testimony. On redirect examination Davis testified without equivocation that, prior to the day of the second trial, he had never talked with any member of the State's Attorney's staff about testifying. These statements and denials of Davis were emphasized in final argument when Zimmerman stated to the jury he did not "believe that any of the witnesses for the State had anything to gain by coming here."

Twelve days after defendant's conviction, a motion was filed in the criminal court by the State's Attorney to reduce the sentence of Davis. This motion, signed both by Davis and assistant State's Attorney Zimmerman, contained a paradoxical stipulation that Davis had been promised "prior to June 12, 1962," that the State would recommend a reduction of the two-to-eight-year sentence "imposed on June 12, 1962," if he would co-operate with the State in the case against defendant, and also recited that Davis had in fact testified against defendant, and that the latter's trial had resulted in a finding of guilty. As a result of the motion, the prior sentence was vacated and Davis was resentenced to imprisonment for a term of one to three years.

Defendant prematurely sued out a writ of error to this court, then, following the procedure outlined in *People* v. *Hoskins*, 25 Ill.2d 333, raised the issue of whether perjured testimony had been knowingly used by filing a petition for post-conviction relief in the criminal court, the petition al-

leging the facts substantially as heretofore stated. An answer of the People, supported by affidavits of Siet, Ciardelli and Zimmerman, denied that Davis's answers had been perjurious and alleged that the questions of defense counsel which led to the answers of the witness were indefinite and misleading.

Summarized briefly, the averments of the affidavits filed by the People were as follows: (1) Siet—that sometime between February 14, 1962, and June 12, 1962, he had made an offer of leniency to Davis in return for the latter's testimony against defendant, that the offer had been refused, and that the affiant had no further communication or conversation with Davis. (2) Zimmerman—that on July 25, 1962, immediately prior to the selection of the jury on the occasion of defendant's second trial, he had spoken to Davis and inquired if Davis would testify, and that when Davis asked if his sentence would be reduced the affiant informed him that no promises could be made and that his testimony would have to be given voluntarily, without promise of "immunity" or reward. Continuing, Zimmerman averred that after Davis had testified and defendant had been found guilty, Davis requested that a motion be made for the reduction of his sentence, and that he, the affiant, upon learning from Ciardelli that Siet had offered leniency prior to June 12, 1962, prepared and successfully presented such a motion. (3) Ciardelli—that he, while knowing of Siet's offer of leniency, had no personal contacts or conversations with Davis at any time, and therefore had no reason to believe that Davis was telling an untruth when he testified that he had received no promise of leniency to testify "in this case." Davis did not execute an affidavit, nor did he appear as a witness at the post-conviction hearing, and we note that a motion of defendant for the issuance of a writ of *habeas corpus ad testificandum* to obtain Davis's presence was denied by the court.

The sole witness at the hearing on the petition was Ciardelli, who was called by the court. And in explaining why he had not acted or sought to correct Davis when the latter denied either conversation with the State's Attorney's staff or promises of leniency, Ciardelli reasoned that since Siet's offer of leniency had been made prior to the first trial and had not been accepted, he considered the offer as no longer valid or related to the second trial, and that he considered the questions directed to Davis, and the answers given, as having reference only to conversations and promises made in direct contemplation of defendant's second trial. The judge hearing the post-conviction petition accepted and adopted both of these hypotheses and denied relief, holding that Davis had not committed perjury, inasmuch as no offer or promise of leniency had been made immediately prior to the second trial, and that the prosecution therefore had not knowingly permitted false testimony to stand uncorrected. The People make the same contentions in this court, relying heavily on the averment in Zimmerman's affidavit that he had told Davis no promise of leniency could be made.

We do not believe the constitutional safeguard of due process of law can be made to hinge upon the gossamer distinctions indulged in by the trial court. Any fair appraisal of the record shows that Davis's denials were couched in terms that he had never been approached by the State's Attorney's staff and that he had never been offered leniency, and that the jury, which should have been informed of *all* circumstances affecting the credibility and reliability of the witness, was left to believe that such was the case. Both Ciardelli and Davis knew that the latter's denials were untrue, and under the principles enunciated in *Napue* v. *Illinois,* 360 U.S. 264, 3 L. ed. 2d 1217, it became incumbent on the prosecutor to disclose the full and true background for the appearance of the witness. The fact that Ciardelli had only hearsay knowledge of Siet's offer of

leniency is no excuse. Necessarily an offer of leniency by one member of the State's Attorney's staff is binding on all its members. Otherwise the duty to disclose the truth in cases such as this could be easily circumvented by the device of having one assistant make the offer of leniency, and another conduct the trial at which the offeree testifies.

Nor are we impressed with the arguments of the People which center around the averment in the Zimmerman affidavit to the effect that Davis had been told, immediately prior to the second trial, that no promise of leniency could be made. In the first place this averment is in direct contradiction to the motion to reduce Davis's sentence which alleges that his appearance as a witness was directly referrable to a promise of leniency. Both the affidavit and the motion were drawn by the People and the contradiction therein must be resolved against them. Secondly, human nature being what it is, we are not prepared to say that the spark of hope kindled by Siet's promise of leniency was not an influencing factor on the appearance and testimony of Davis at the second trial.

We conclude that the prosecution suffered false testimony to go uncorrected,—testimony which had a direct relation to the jury's determination of guilt or innocence, and thereby denied defendant a fair trial.

Seeking outright reversal rather than remandment for a new trial, defendant contends that he should be discharged because the admissible evidence would be insufficient to support a conviction on retrial. However, the point is not well taken. We have consistently held that the positive identification by one witness who had a favorable opportunity for observation may be sufficient to support a conviction even though such testimony is contradicted by the accused, (*e.g. People* v. *Miller,* 30 Ill.2d 110; *People* v. *Solomon,* 24 Ill.2d 586,) and the record here discloses that the complaining witness observed defendant under favorable conditions and

identified him as the robber who had actually committed the crime.

For the reason stated, the judgment of the criminal court of Cook County and its order denying post-conviction relief are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*