THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS EVANS, Defendant-Appellant.

Third District   No. 77-195

Opinion filed November 30, 1977.

Michael A. Unger, of Rocco & Unger, Ltd., of Chicago, for appellant.

Edward Petka, State's Attorney, of Joliet (Richard Ralough, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant Thomas Evans appeals from a murder conviction which was entered following a jury trial in the Circuit Court of Will County. The sole issue on appeal is whether the guilty verdict resulted from the perjured testimony of defendant's wife, Patricia Evans, who was the State's only occurrence witness.

In September of 1975 defendant and Mrs. Evans were living apart after six years of marriage. About 10 p.m. on the night of September 14, defendant went to Mrs. Evans' apartment armed with a hand gun. According to Mrs. Evans, she was ironing, and a friend from work, Demtrius Bond, was sitting at the dinette table with a pencil in his hand computing some overtime records. When the doorbell rang, she went to the door, and as defendant pushed past her, she screamed "Dee." She testified that she saw defendant with a gun going towards Demtrius in the middle of the room, that she saw a yellow No. 2 pencil in Demtrius' left hand, that Demtrius shrugged his shoulders and said, "Man," and that defendant shot Demtrius in the chest from a distance of less than arm's length. After Demtrius fell to the floor, defendant put his foot on the victim's arm and shot him a second time and then a third time. The gunshot wounds were fatal.

A sheriff's investigator testified for the prosecution that sheets of paper containing numbers written in pencil were lying on the table and scattered on the floor. He also saw a pencil on the floor. Photographs of the scene were introduced which showed the pencil on the floor, blood spots, the papers, the ironing board, and other physical evidence.

Defendant testified in his own behalf. He admitted shooting Bond in Mrs. Evans' apartment, but insisted that he acted in self-defense. He said that he tripped as he entered the apartment and landed on his back part way into the living room. He looked up and saw Bond rushing at him with a shiny object in his hand that looked like a knife, and heard Bond say,

"Man, you had it." Defendant said he then pulled his gun out and fired. The victim kept coming so defendant fired again one or two times as the victim was falling. Then defendant jumped up, threw down the gun, and ran out of the apartment.

The jury returned a verdict of guilty of murder, and defendant filed a post-trial motion, alleging *inter alia* that the prosecutor was guilty of misconduct by his coercion of Mrs. Evans which resulted in a deprivation of defendant's constitutional right to a fair trial. The trial court held an evidentiary hearing in connection with the post-trial motion.

At that hearing Mrs. Evans testified for defendant that she had voluntarily appeared before the grand jury in November of 1975 and then had notified the State's Attorney's office that she was going to California. She said that she gave a secretary her brother's California address and phone number where she could be reached. On May 19, 1976, she was arrested in California on an obstruction of justice charge filed by the Will County State's Attorney. After she was arrested, Ira Goldstein, the assistant State's Attorney in charge of the case, telephoned her in jail and threatened to keep her locked up for 10 years if she did not cooperate. After she returned to Illinois, her attorney negotiated a grant of immunity on the obstruction of justice charge in return for her testimony at defendant's murder trial. According to Mrs. Evans, when Goldstein interviewed her shortly before trial, she first stated that she was unable to see Bond's hands before and during the shooting, but then, because she was afraid of Goldstein, she changed her story to say that she saw the pencil in Bond's hand. Goldstein testified that his only conversation with Mrs. Evans about her testimony took place in the presence of her two attorneys, that she was charged with obstruction of justice after he was unable to reach her at the California address in his file, and that she voluntarily stated to him that Bond had a pencil in his hand. Goldstein's testimony about his contacts with Mrs. Evans contradicted her testimony in numerous other details.

At the conclusion of the hearing on the post-trial motion, the trial judge stated that he believed Goldstein and did not believe Mrs. Evans or her California attorney who had corroborated some of her testimony relating to her California arrest. The court also stated that Goldstein's testimony was straightforward, forthright, candid, and consistent, and for the record, the court noted that defendant and Mrs. Evans had kissed one another affectionately in the courtroom, indicating an apparent reconciliation of their marital difficulties. The post-trial motion was denied. After the sentencing hearing defendant was given a sentence from 14 years to 14 years and one day in prison.

■■ On appeal defendant contends that his conviction should be reversed because the chief prosecution witness has admitted giving

perjured testimony against defendant and because Assistant State's Attorney Goldstein was guilty of prosecutorial misconduct. We agree that defendant would be entitled to a new trial if Mrs. Evans' post-trial testimony as to her perjury were to be believed. (See, *e.g.*, *People v. Bolton* (3d Dist. 1975), 10 Ill. App. 3d 902, 295 N.E.2d 11.) However, the question presented by this appeal is quite simply one of credibility of the witnesses who testified at the hearing on the post-trial motion. In matters heard without a jury it is the function of the trial judge to resolve conflicts in testimony and to determine the credibility of the witnesses, and a reviewing court may not substitute its judgment for that of the trier of fact. *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280; *People v. Winfield* (3d Dist. 1975), 30 Ill. App. 3d 668, 332 N.E.2d 634.

■■ We note that Mrs. Evans' trial testimony was consistent with her earlier testimony before the grand jury and was corroborated by the physical evidence at the scene. Illinois courts have often remarked that recanting testimony is generally unreliable, and that a new trial should be denied where the trial judge was not satisfied that such testimony was true. *People v. Nash* (1966), 36 Ill. 2d 275, 222 N.E.2d 473; *People v. Jones* (4th Dist. 1975), 26 Ill. App. 3d 78, 325 N.E.2d 56.

■■ We see no reason to disturb the finding of the trial judge, and therefore the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.