THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STACEY ANN McLAIN, Defendant-Appellant.

Second District No. 2—89—1163

Opinion filed March 27, 1992.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Thomas F. Baker, State's Attorney, of Woodstock (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

A jury in the circuit court of McHenry County found defendant, Stacey Ann McLain, guilty of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2)) and failure to stop after having an accident involving personal injury or death (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401(a)). Defendant was sentenced to 32 years in prison for the murder conviction and 360 days for failure to stop, the terms to be served concurrently. On appeal defendant contends that the trial court erred when it (1) apprised the jury that she had entered a plea of guilty but mentally ill, (2) denied her motion for substitution of judge, and (3) admitted evidence of a prior uncharged offense by defendant.

Early in the evening of July 15, 1988, Robert Kosick and Patricia Lauraitis walked, arm in arm, northbound along the west edge of a residential road near Kosick's home in McHenry County. The gravel shoulders of the road began at the edge of the pavement and gradually sloped off to a shallow, grassy ditch. At about the same time Kosick and Lauraitis were walking, defendant, accompanied by Jennifer Emrich, drove her car toward Kosick's home. She assertedly wanted to drop off a piece of mail belonging to Kosick, who was her former boyfriend and ex-fiance. The relationship between defendant and Kosick had ended about two months earlier.

Approaching from a cross street up ahead of the couple, defendant turned the car into the southbound lane of the same residential street where Kosick and Lauraitis were walking northbound. Although it was not entirely undisputed, the evidence tended to show that, as it approached the two pedestrians from the north, defendant's car veered toward them so that the right tires went off the pavement and onto the gravel, or at least very close to the edge of

the pavement. Defendant's car struck Lauraitis, who died of head injuries a short time later. The door handle and mirror of the car brushed Kosick, but he had otherwise managed to move out of the way of the car into the grassy roadside area. The car swerved back onto the roadway and kept on going. Defendant never came back to offer aid or seek help for Kosick and Lauraitis. Defendant, who was 16 years old at the time of the incident, was subsequently charged with first degree murder, reckless homicide and leaving the scene of an accident. She was tried as an adult and convicted on the charges of murder and leaving the scene of an accident. Additional facts will be presented as needed to resolve the issues.

Defendant first contends that she was denied a fair trial when the jurors were informed that she had entered a plea of guilty but mentally ill. At her arraignment defendant entered a plea of not guilty. However, on the first day of trial, defense counsel filed a statement of defenses which proclaimed:

> "Please take notice that at the trial of this cause, the defendant shall assert the alternate defenses of not guilty and guilty but mentally ill."

Counsel indicated verbally to the court and the State that he was asserting guilty but mentally ill as an affirmative defense.

At the beginning of *voir dire*, as part of its opening remarks to the venire, the court recited the charges against defendant and explained that she denied those charges and had pleaded not guilty to each of them. He then added the following statement, "In the alternative, the defendant has pled guilty but mentally ill to each of these charges." This remark, or words similar to it, was addressed to the veniremen each day they reconvened for jury selection.

*Voir dire* itself was conducted in chambers with each prospective juror individually, rather than in the courtroom in front of the entire venire. However, the prosecutor asked some of the prospects a series of questions relevant to the issue of mental illness. With 9 of the 12 jurors who were ultimately impaneled, counsel prefaced this line of questioning with the following, or a similar, remark: "You have also heard the Judge say in the courtroom that there is an alternative plea of guilty but mentally ill here."

Despite the earlier references to defendant's "alternative plea," no evidence relevant to mental illness was presented to the jury, and in closing argument defense counsel made the following statement:

> "When you were being questioned as to your ability to serve as jurors, the State asked all of you about the question of mental illness. No psychiatrists were called to testify in this case.

> We have not put any evidence in as to mental illness. There will be no instruction given to you as to mental illness. We have not really tried to show it to you. We are not claiming that she was mentally ill. It is a confusing principle for lawyers, also obviously would have been confusing to you and therefore no mention of it has been made at this trial and we don't intend to ask you to do anything about the mental illness. It is completely out the door, out the window, not in the house."

The jury was not given an instruction as to guilty but mentally ill. However, at no time subsequent to *voir dire* did the trial judge address the jury as to this particular plea. Even though defense counsel made the statement set forth above, the jurors were never told by the court that the plea had been withdrawn.

Defendant contends that the trial court erred in allowing a plea of guilty but mentally ill to be made to the jury and that defense counsel's entry of a guilty but mentally ill plea to the jury constituted ineffective assistance of counsel. With regard to both arguments, defendant asserts that she must be given a new trial. We agree that defendant is entitled to a new trial, although we decide the matter on only one of the grounds raised by defendant.

To begin with, we agree with defendant that the controlling statutes do not contemplate that a guilty but mentally ill plea is to be made to a jury. The concept of guilty but mentally ill may arise in the course of a jury trial, but not in the context of a plea.

■ Section 113—4 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 113—4) provides for a plea of guilty but mentally ill. When such a plea is made, however, it may not be accepted by the trial court until the defendant has had a psychological examination and waived his right to trial, and the judge has examined the psychiatric report, held a hearing on the issue of defendant's mental condition, and been satisfied that there is a factual basis that defendant was mentally ill when the offense was committed. (Ill. Rev. Stat. 1987, ch. 38, pars. 113—4(d), 115—2(b).) When the statutory requirements have been completed, the trial court decides whether to accept or refuse the plea. If it is rejected, the matter proceeds to trial. If, on the other hand, the plea is accepted, there will be no trial. Defendant will simply be sentenced pursuant to section 5—2—6 of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—6), which provides for psychological examination and treatment of a defendant's mental illness. Thus, a guilty but mentally ill plea is made to and disposed of by the court without a jury.

 The concept of guilty but mentally ill, however, may come to the jurors' attention within the framework of an insanity defense. Mental illness, in and of itself, is not an affirmative defense but may be accepted as a finding when the affirmative defense of insanity is raised. (Ill. Rev. Stat. 1987, ch. 38, par. 6—4.) Guilty but mentally ill may also be the subject of a jury instruction and may be returned as a special verdict, but, again, only if an insanity defense has been presented at trial. (Ill. Rev. Stat. 1987, ch. 38, par. 115—4(j).) In sum, as we read the statute, it was not intended that guilty but mentally ill should be a plea to a jury. Moreover, there is no contention here that defense counsel presented an insanity defense. Therefore, there was no statutory basis which would have warranted presenting defendant's guilty but mentally ill position to the jury.

 Allowing defendant's plea to go to the jury was not only not in keeping with the statute, but it also compromised defendant's position. The record reflects that both defense counsel and the court, and perhaps the prosecutor, viewed guilty but mentally ill as an alternative plea to defendant's initial plea of not guilty. That is exactly how the plea was described to the jury—as an alternative plea. This put defendant in the unenviable position of pleading both guilty and not guilty.

A person who suffers from mental illness, but is not insane at the time he commits an offense, is not relieved of criminal responsibility for his conduct. (Ill. Rev. Stat. 1987, ch. 38, par. 6—2(c); *People v. Seuffer* (1991), 144 Ill. 2d 482, 516; *People v. Crews* (1988), 122 Ill. 2d 266, 278.) A guilty but mentally ill plea differs from a guilty plea only as to sentencing, which provides for certain psychological help to be given to a defendant. Thus, that defendant has pleaded mental illness does not make the guilty portion of his plea anything less than an unconditional guilty plea. Consequently, with regard to her guilt or innocence, defendant's plea of guilty but mentally ill was tantamount to a straight plea of guilty. A guilty plea admits every material fact alleged in an indictment and all elements of a charged offense. (*People v. Caplinger* (1987), 162 Ill. App. 3d 74, 79-80.) Hence, the jurors were told that defendant had pleaded not guilty but also had admitted she committed the offense with which she was charged.

 Even if it were appropriate to plead guilty but mentally ill to a jury, the plea made in this case would have been error. A guilty but mentally ill plea may be accepted before or during a trial only after the defendant has had a psychological examination and waived his right to trial, and the judge has reviewed the psychological report and held a hearing. It is not contested that none of these steps were taken

after defense counsel informed the court that defendant wanted to plead guilty but mentally ill as an alternative plea. Thus, the plea should not have been accepted by the trial court. It follows that it should not have been presented to the jury either.

Finally, with regard to the dual pleas, the trial court never told the jurors that defendant's plea of guilty but mentally ill had been withdrawn and should not be considered by them. We recognize that defense counsel's remarks during closing argument indicated some sort of retraction of the plea, but we agree with defendant that a trial judge has great influence over a jury (*People v. Heidorn* (1983), 114 Ill. App. 3d 933, 937) and that the jury rightfully looks to the judge, rather than counsel, for direction. In this instance, that direction was not forthcoming.

The trial court erred in accepting defendant's guilty but mentally ill plea absent the statutorily mandated safeguards. The error was compounded when the court allowed the unauthorized plea to be made to the jury, particularly since the plea itself was not only tainted but also in direct conflict with defendant's "alternative" plea of not guilty. Collectively, we believe the errors were sufficiently prejudicial to defendant to warrant a new trial.

At the very least, the information that defendant had made inconsistent pleas was likely a source of confusion and uncertainty to some of the jurors. One venireman's reaction bears this out. In response to certain of the court's questions, prospective juror Flood asked about the multiple pleas. After the court explained that defendant had pleaded not guilty and, in the alternative, guilty but mentally ill, the juror said:

> "Okay. I guess what I have difficulty with is that second plea. If you are saying that, yes, the accident happened—And by saying guilty but mentally ill, aren't your acknowledging that you did this? And I guess then if I am not impartial, I have difficulty with that second plea. It seems to me someone is saying I did it."

Juror Flood was ultimately excused, but her confusion is understandable and likely was shared by other jurors.

Far worse than any mere confusion caused by inconsistent pleas was the prejudice caused to defendant when the jury was told she had pleaded guilty. In *People v. Haycraft* (1966), 76 Ill. App. 2d 149, defendant's guilty plea was withdrawn prior to trial by leave of court. At trial a witness revealed, only briefly, that the accused had previously pleaded guilty to the charge for which he was on trial. An objection was promptly sustained, the testimony was stricken, and the

jury was admonished to disregard the testimony in its entirety. Nevertheless, we reversed the defendant's conviction, citing, in particular, *Kercheval v. United States* (1927), 274 U.S. 220, 71 L. Ed. 1009, 47 S. Ct. 582, where the court found that the introduction of defendant's guilty plea may have turned the scale against him and, as a result, reversed his conviction. We stated in *Haycraft*:

> "It is *** difficult to conceive a disclosure more apt to influence a jury than the information that the accused had at one time pled guilty to the commission of the crime with which he stands charged. The average juror *** would be unable to contemplate that a man would admit guilt to a crime if in fact he were not guilty. Furthermore, he would be unable to erase that disclosure totally from his mind regardless of an admonishment from the court, however prompt and however strong. *** [O]nce that disclosure has been made we cannot say that he has received the fair and impartial trial to which he is entitled." *Haycraft*, 76 Ill. App. 2d at 153.

A factual situation very similar to that in *Haycraft* arose in *People v. Bain* (1973), 10 Ill. App. 3d 909, but the trial court refused to declare a mistrial, remarking that the witness revealed defendant's earlier guilty plea in response to a question by defense counsel. Noting that counsel's question had not been asked purposely, to cause a mistrial, the *Bain* court followed *Haycraft* and echoed our reasoning that it is devastating to an accused in the minds of the jury to reveal, "however briefly or inadvertently," that defendant had previously "admitted his guilt to the very crime for which he was being tried." *Bain*, 10 Ill. App. 3d at 911.

In a similar vein, we note Supreme Court Rule 402(f) (134 Ill. 2d R. 402(f)), which renders testimony about plea discussions inadmissible against criminal defendants. Illinois courts have recognized that use of such testimony in violation of the rule has a devastating effect and have held that the use of such testimony was so prejudicial as to require reversal even absent an objection and despite overwhelming evidence of defendant's guilt. (See *People v. Friedman* (1980), 79 Ill. 2d 341, 353 (and cases cited therein); see *People v. Cowherd* (1983), 114 Ill. App. 3d 894, 899 (and cases cited therein).) Further, in *Cowherd* we found that the use of testimony pertinent to a plea-related discussion was also a substantial denial of defendant's constitutional rights for purposes of securing relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*). The sum of the authority we have cited persuades us that defendant's conviction must be reversed.

We recognize that the facts of this case are not the same as those of any of the cases discussed above. Defendant's plea was guilty but mentally ill rather than a guilty plea. While such a plea is not as clear cut as a straight plea of guilty, the use of the word "guilty," as shown by juror Flood's reaction, is tremendously significant. The plea here was not revealed to the jury in the form of testimony or other evidence, as in the cited cases. Rather, but perhaps even more telling, it was stated to the jurors by the judge, at least once and in some cases repeatedly, depending on the day the juror first appeared on the venire. In the case of nine jurors, the fact that defendant had pleaded guilty but mentally ill was again brought to mind by the prosecutor. Finally, although defense counsel attempted in closing argument to tell the jury that defendant was not pursuing any defense of mental illness, as far as the jurors were concerned defendant was amenable to their being told that she had pleaded guilty. Counsel never objected when they were told and reminded of this plea. Nor did counsel voice any concern about the conflicting pleas. The jury was never told by the trial court that the plea had been withdrawn and never admonished that it should be disregarded. The jury was free to go on believing, as it had been told by the court, that defendant had pleaded both not guilty and guilty but mentally ill.

The State points out that the meaning of guilty but mentally ill was not explained to the jurors, the issue was not raised during trial, and defense counsel assured the jury that mental illness was not an issue. The State posits that the contemporaneous but conflicting pleas were, at most, ambiguous. While much of what the State argues may technically be true, we do not agree that defendant's due process claims are greatly exaggerated and highly speculative, as claimed by the State. What we said in *Haycraft* bears repeating here:

> "We can think of nothing more damaging to an accused in the minds of the jury than the disclosure, however brief, that he had admitted guilt to the charge against him, and once that disclosure has been made we cannot say that he has received the fair and impartial trial to which he is entitled." *Haycraft*, 76 Ill. App. 2d at 153.

The jury here was well aware that defendant had pleaded guilty, and in fact pleaded guilty and not guilty simultaneously. Defendant was irreparably prejudiced by revelation of the guilty plea in and of itself and also by the entry of conflicting pleas. Thus, she was denied a fair trial in violation of her right to due process and must be given a new trial.

We believe a final observation is in order regarding the errors made in this case. There is no question that a trial judge is obliged to make sure that a defendant is tried before a fair and impartial jury. (*People v. Seuffer* (1991), 144 Ill. 2d 482, 507; *People v. Taylor* (1984), 101 Ill. 2d 377, 387.) Further, the trial judge's role is not merely that of a presiding officer or an umpire; he is responsible for the justice of the judgment that he enters. (*Wozniak v. Segal* (1974), 56 Ill. 2d 457, 460; *Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 106.) Although we have decided this case on the basis of trial court error, we cannot leave it without remarking that the trial judge is not the only one charged with the weighty responsibility of seeing that justice is done in a criminal trial. It goes without saying that defense counsel has an obligation of the highest order to protect the rights of his client. The prosecution, as well, must share in the obligation imposed by the demands of justice. His responsibility is not limited to the State. Rather, he represents all of the people, including defendants, and it is his duty to see that defendants receive a fair trial, no matter how guilty they may be. (*People v. Faulkner* (1972), 7 Ill. App. 3d 221, 225.) This case serves as a compelling reminder that all of those responsible for accomplishing justice in and through the trial process must be ever vigilant to prevent breakdowns, such as the one that occurred here, from repeating themselves in the future.

Inasmuch as we have found a breach of defendant's constitutional rights based on due process, we express no opinion as to whether defense counsel's entry of a guilty but mentally ill plea to the jury constituted ineffective assistance of counsel.

Since this matter must be remanded for a new trial, we turn our attention now to defendant's claim that she should have been granted a substitution of judge. On the day trial was scheduled to start defendant filed a motion and affidavit seeking a substitution of judge for cause, pursuant to section 114—5 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 114—5). Defendant alleged that a close, personal relationship existed between Thomas Baker, the State's Attorney of McHenry County, and Judge Michael Sullivan, the trial judge, in that (1) they were neighbors; (2) the judge's wife was the godmother of one of Mr. Baker's children; and (3) the State's Attorney had chaired the judge's election campaign. A hearing was held in front of another judge. While evidence was not taken, the State did not deny defendant's allegations. Defendant argued that, in light of the relationship between the judge and State's Attorney, she feared she could not receive a fair trial. The motion was denied. Defendant insists that the denial constituted reversible error.

■ While her argument is not altogether clear, defendant appears to rely on language in Canon 3 of the new Code of Judicial Conduct (Judicial Code), which became effective on January 1, 1987, and which states with regard to disqualification:

"A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where

(a) he has a personal bias or prejudice concerning a party or his lawyer ***." (134 Ill. 2d R. 63(C)(1)(a).)

As defendant correctly notes, the rule requires a judge to recuse himself when his participation might reasonably give rise to questions regarding his impartiality. We agree that this includes situations involving the appearance of impropriety. However, despite defendant's suggestion to the contrary, although the rule sets standards for judicial conduct, it neither states nor seems to imply that the mere appearance of impropriety, by itself, is sufficient to find that defendant is entitled to a new trial. We do not believe the language of the Judicial Code changed the controlling authority in this regard.

A showing of actual prejudice must be made in order to obtain a change of venue from a trial judge in a pending action after he has made a substantive ruling. (*People v. Vance* (1979), 76 Ill. 2d 171, 181; *People v. Moffat* (1990), 202 Ill. App. 3d 43; *Gluth Brothers Construction, Inc. v. Union National Bank* (1989), 192 Ill. App. 3d 649, 656; *In re Marriage of Click* (1988), 169 Ill. App. 3d 48, 53; *People v. Anderson* (1981), 95 Ill. App. 3d 143, 147.) The burden of establishing actual prejudice is on the defendant. (*People v. Neumann* (1986), 148 Ill. App. 3d 362, 370.) It is not disputed that Judge Sullivan had made substantive rulings. After carefully reviewing the allegations of defendant's motion, we conclude that she has not shown the requisite prejudice.

First and foremost, State's Attorney Baker did not personally prosecute this case. That was done by Baker's first assistant. Defendant acknowledges this but posits that the State's Attorney's personal prestige is on the line when a case like this one—which she appears to characterize as an unusual and high profile case—is tried by *anyone* in the State's Attorney's office. Defendant urges that the judge's concern for the State's Attorney's reputation is likely to influence his decisions, no matter that the State's Attorney is not personally prosecuting the case. Defendant offers no authority for this position, but even if she did, the fact would remain that the alleged bias in favor of the State's Attorney, even when viewed most favorably to defendant's

position, would still necessarily be one step removed from the prosecutor actually in the courtroom.

We feel it is important to add that, as a practical matter, were we to adopt the position urged by defendant, it would mean that Judge Sullivan would be disqualified from sitting on any cases, criminal or civil, involving the office of the State's Attorney, no matter who was doing the actual prosecuting, for as long as Mr. Baker is the State's Attorney of McHenry County. The same would likely be true of any judge with whom State's Attorney Baker could be said to have a relationship similar to that he shares with Judge Sullivan. The mere fact of this result raises serious doubts as to the viability of defendant's argument.

Even when we do examine the relationship between the judge and State's Attorney, we are unable to discern prejudice sufficient to warrant reversal. Defendant apparently concedes that the existence of a mere friendship between a lawyer and a judge does not obligate the judge to recuse himself. She maintains, however, that the relationship between Judge Sullivan and State's Attorney Baker was something far more than a mere friendship, something, in fact, sufficient to have resulted in substantial prejudice against her and sufficient, therefore, to require a new trial. Defendant's allegations do not support this conclusion.

That the judge and the prosecutor happen to be neighbors is of no consequence. Neighbors are not inevitably friendly and, in fact, sometimes have no personal relationship at all. Merely being a neighbor, by itself, does not necessarily require recusal. In *People v. Anderson* (1981), 95 Ill. App. 3d 143, the defendant sought the disqualification of the trial judge who found him guilty because the judge was a former neighbor of a prosecution witness who was the complainant's mother. The court held the defendant had not shown that he had been denied a fair trial because he had not proved that the nature of the judge's acquaintance with the witness was substantial enough to make unfairness probable. Likewise here, we fail to see how the mere fact that Judge Sullivan and the State's Attorney are neighbors made it likely that defendant would not have a fair trial.

Defendant's allegation that Judge Sullivan's wife was a godmother of one of the State's Attorney's children is not compelling that defendant was denied a fair trial, either. For all that is revealed by the motion, Mrs. Sullivan could have become the child's godmother prior to her marriage to the judge. At any rate, the naked allegation tells us little of the relationship between the judge and State's Attorney Baker.

Finally, that the State's Attorney chaired the judge's election committee is no more determinative in favor of defendant than the previous two points. In *Gluth Brothers Construction, Inc. v. Union National Bank* (1989), 192 Ill. App. 3d 649, we determined that there was neither the appearance of impropriety nor actual prejudice because, although the plaintiff's attorney had served as the trial judge's campaign manager, that connection had occurred nearly six years earlier, had been fully disclosed at the time, and was a matter of public knowledge. Further, there was neither an allegation nor evidence that any kind of relationship between the two men continued on, or was current and ongoing, after the judge's election. Here, defendant does not indicate how long ago the election took place, only that it was before the State's Attorney himself was elected. Presumably, because he himself was elected at a separate, later election, the State's Attorney must have worked for the judge's reelection some time ago. It seems reasonable to assume, also, that, like the relationship in *Gluth*, the connection between Judge Sullivan and Mr. Baker would have been disclosed and well known to the public at the time of the election. Too, even assuming that they were close at one time, we perceive nothing in defendant's allegations to show that the judge and the State's Attorney have stayed close since both were elected to their present positions. We do not believe defendant's allegations reflect that, at the time of her trial, Judge Sullivan and State's Attorney Baker shared such a close relationship that her right to a fair trial was threatened.

Defendant points out that the defendant in *Gluth* did not call the court's attention to the basis for recusal until the entire trial was completed. She implies that the *Gluth* defendant was seeking to void the unfavorable decision it had received from the court rather than disqualification from future proceedings, as she sought here. While this may be true, it does not change the requirement, acknowledged by the *Gluth* court, that a party seeking a judge's recusal must show actual prejudice to itself. Defendant's attack on *Gluth* is of no avail. We conclude that Judge Sullivan was not required to disqualify himself on the ground that Mr. Baker at some unspecified time served as his campaign chairman.

Even when we view defendant's allegations collectively, we are not persuaded that the actual prejudice necessary for reversal has been demonstrated. Essentially, defendant asserted that the friendship between Judge Sullivan and the State's Attorney was so strong that it would necessarily override the judge's ability to be fair and impartial. In *In re Marriage of Click* (1988), 169 Ill. App. 3d 48, we de-

nied relief to a petitioner who alleged that she was prejudiced by the trial judge's refusal to recuse himself since the judge and her former spouse's attorney were both members of an exclusive legal organization. We could find no support for petitioner's contention of prejudice either in the record or in the authorities cited by petitioner. More significantly for purposes of this case, we pointed out that petitioner cited no authority to support her position that *suspected* bias or prejudice on the part of a trial judge can serve as the basis for a new trial. *Click*, 169 Ill. App. 3d at 53.

Similarly, in *People v. Moffat* (1990), 202 Ill. App. 3d 43, the trial judge's son, who was an assistant State's Attorney, was seen in the courtroom talking to the prosecutor, defense counsel, and his father. Defendant claimed that this gave the appearance of impropriety and required reversal. The court said that the record did not support defendant's allegations of impropriety and, therefore, he had not proved actual prejudice, or even the probability of unfairness. The court added that the mere fact that the judge's son was an assistant State's Attorney "would not warrant the assertion that defendant was deprived of a fair trial. It is preposterous to assume that a judge's propensity to convict criminal defendants would increase simply because his or her son or daughter is an assistant State's Attorney." *Moffat*, 202 Ill. App. 3d at 56-57.

*Moffat* differs from this case in that defendant in *Moffat* attacked the impartiality of the trial judge for the first time after the trial was over. As stated by the *Moffat* court, "defendant apparently only felt that he had been prejudiced after he was convicted." (*Moffat*, 202 Ill. App. 3d at 56.) Nevertheless, we think defendant's allegations of prejudice here are also speculative and based on the assumption that Judge Sullivan could not be fair to this defendant solely because she was being prosecuted by Mr. Baker's office. Such an assumption falls into the same category as the "suspected" bias which we disapproved in *Click*.

In sum, defendant has not shown any actual prejudice to herself as a result of the relationship between Judge Sullivan and State's Attorney Baker. Defendant's reliance on *United States v. Murphy* (7th Cir. 1985), 768 F.2d 1518, is not helpful to her position since the close, personal relationship there was between the trial judge and the lawyer actually prosecuting the case. *Murphy* does not address the circumstances of this case. Furthermore, the *Murphy* court made clear that the statutory recusal provision asserted by defendant there applied to circumstances involving the appearance of impropriety, rather than actual conflict of interest situations. After observing that cases

in which appearance questions are waived if not timely asserted show that appearance of impropriety does not undercut personal rights, the court added, "And unless an error affects substantial rights, it is not a basis of reversal." (*Murphy*, 768 F.2d at 1540.) We have closely read *Murphy* and find that, although the court did not address the question directly, it certainly implied in ample *dicta* that reversal is not the proper consequence in a recusal situation involving only the appearance of impropriety, rather than actual prejudice. Thus, we do not believe *Murphy* to be as inconsistent with the decision we reach here as is suggested by defendant's argument.

Defendant's final contention is that evidence of prior misconduct on her part was improperly admitted and, therefore, a new trial was required. Prior to trial defendant made a motion *in limine* to exclude evidence of prior acts, by her, similar to the offense for which she was on trial. The court took the motion under advisement. Subsequently, following an offer of proof by the State, the court ruled, and instructed the jury, that the testimony of Sandra Bielski was being received solely on the issue of the defendant's intent and motive.

Bielski testified that on July 13, 1988, two days before the incident involved in this case, she had been at Robert Kosick's home waiting for Kosick to arrive home from work. When he did not appear she started walking north on Elmleaf Street, the road in front of Kosick's home. She walked on the gravel at the side of the road. The witness saw defendant's car turn a corner up ahead of her and come southbound on Elmleaf Street in the same lane where she was walking. Defendant, who was driving the car, swerved toward Bielski, and the front fender or bumper swept against Bielski's leg. Defendant kept going. The witness did not hear the car brake or the tires squeal. Defendant did not turn the car around or come back to talk to Bielski.

About 10 minutes later, according to her testimony, Bielski was walking along a different road when defendant, still in her car, pulled up behind her. The witness walked further into the adjoining field, away from the edge of the road. Defendant swerved the car into the field, slammed on the brakes, got out of the car, and started yelling at Bielski, who was then a couple of feet away from the stopped car. Defendant asked Bielski, "What are you doing fucking around with Bob?" The witness replied that she was not, and, after some other accusations and denials, defendant reached out and grabbed an earring Bielski was wearing. The earring had been given to the witness by Robert Kosick. Saying, "Give me this," defendant pulled the stud-style earring from Bielski's pierced right ear. Defendant added, "You better stay away from Bob." Bielski replied, "Fine," and defendant

got back in her car and drove off. Before beginning its deliberations, the jury was again given an instruction that Bielski's testimony was to be considered only for the limited purpose of determining defendant's intent and motive.

Defendant specifically asserts that Bielski's testimony that defendant tore an earring from her ear is irrelevant on the question of defendant's intent or motive to commit the charged crimes. Defendant further attacks Bielski's testimony in its entirety, claiming it was more prejudicial than probative. Neither of defendant's arguments can be sustained.

 It is well established that a defendant's prior, but uncharged, misconduct is not admissible for purposes of establishing his bad character or propensity to commit crimes or bad acts, because the prejudicial impact of such evidence outweighs its minimal probative value and undermines the presumption of innocence. (*People v. Hendricks* (1990), 137 Ill. 2d 31, 52.) However, it is equally well established that an exception is made to the general rule of inadmissibility for evidence probative of motive, intent, identity, absence of mistake or other material facts in issue even though such evidence reveals prior instances of uncharged misconduct by the defendant. (*Hendricks*, 137 Ill. 2d at 53.) Viewed against these principles, Sandra Bielski's testimony regarding defendant's actions on July 13, 1988, was properly admitted by the trial court.

Defendant's attempt to separate out and characterize as irrelevant Bielski's testimony that defendant pulled an earring out of her ear is strained and artificial. That particular testimony was not presented as evidence of a separate incident or act of misconduct or, as asserted by defendant, a collateral offense. Rather, it was part and parcel of the witness' account of what happened to her, at the hands of the defendant, two days before the victim in this case was killed. In light of the gravity of the remainder of Bielski's testimony, that defendant tried to hit her with a car, we think defendant has blown the earring portion of the incident out of proportion. Accordingly, we will treat the testimony as a whole.

Bielski's testimony was properly admitted because it was highly relevant to a number of material issues in this case. Before discussing its relevance, however, we note that the testimony showed that defendant had a specific method of operation, or *modus operandi*, for dealing with girls who associated with her recently ex-boyfriend, Robert Kosick. Evidence of prior misconduct which shows *modus operandi*, when offered by the prosecution to establish the identity of the perpetrator, is admitted only on a strong and persuasive demon-

stration of similarity between the past and present conduct. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 185.) However, a lesser showing of similarity is needed when *modus operandi* evidence is offered to negate inadvertence, accident, or other innocent intent. (*McKibbins*, 96 Ill. 2d at 185-86.) Identity is not an issue in this case. Defendant does not dispute that she was driving the car which struck Patricia Lauraitis. Moreover, the trial court made clear to the jury that Sandra Bielski's testimony was admitted on the issues of intent and motive. Thus, a strong and persuasive demonstration of similarity is not necessary here. We find, however, that there are, in fact, striking similarities between the incident with Bielski and the incident involved in this case.

In both instances defendant's car was her weapon. Both victims were new, female friends of Kosick, and both events occurred near Kosick's home. Defendant attacked both girls in virtually the same fashion, at times when she was in control of the weapon and they were particularly vulnerable to that particular weapon, *i.e.*, walking along the edge of the road. In our view, the likenesses were sufficient to support admission of the challenged testimony for purposes other than identification.

The occurrence was relevant on the question of defendant's motive. It showed that she acted out of jealousy. All of her conduct at the time she grabbed Bielski's earring clearly reflected that jealousy. More importantly, the incident in its entirety revealed that defendant intended to act in the way she did. Defendant drove away after swerving into Bielski and then located Bielski again a few minutes later on a different street. She pulled up behind Bielski before slamming on her brakes, got out of the car, yelled, and grabbed an earring from Bielski's ear. This entire course of conduct demonstrates that the initial charge with the car, in which Bielski was swiped in the leg, was no accident. This evidence was probative on the issue of whether Patricia Lauraitis was struck intentionally. It was important because defendant's weapon was a moving vehicle, and an attack with such a vehicle could readily be claimed to be a driving accident.

Defendant's insistence that Bielski's testimony should have been excluded because its prejudicial effect outweighed its probative value is not persuasive. Defendant argues that the evidence was not important on the issue of motive because there was other ample evidence of defendant's jealous nature. She correctly notes that Robert Kosick and Jennifer Emrich gave testimony indicative of her jealousy where Kosick was concerned. While we would agree there was other evidence of defendant's motive, nowhere else could it be seen so clearly,

as we have described above, that defendant's feelings of jealousy prompted her to deliberately drive a car into the object of that jealousy.

Too, defendant appears to misapprehend the intent that was revealed by the challenged evidence. We concur with defendant that Bielski's testimony did not tend to prove the defendant acted with the intent, or *mens rea*, to kill Patricia Lauraitis. But, as we have discussed, it did reflect that striking Bielski's leg was not accidental. Inasmuch as the evidence tended to show that defendant meant to drive her car into Bielski, we think it was highly probative with regard to what she meant to do when she swerved toward Patricia Lauraitis and Robert Kosick two days later. All in all, the evidence tended to prove material issues in this case, and we cannot say it should have been excluded because of its prejudicial effect.

Based on the reasoning set forth above, the defendant's convictions are reversed, and the cause is remanded to the circuit court of McHenry County for a new trial in accordance with this opinion.

Reversed and remanded.

UNVERZAGT and McLAREN, JJ., concur.