THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY HAYDEN, Defendant-Appellant.

Fifth District   No. 5—00—0492

Opinion filed March 26, 2003.—Rehearing denied April 29, 2003.

Timothy Hayden, of Centralia, appellant *pro se*.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Rebecca E. McCormick, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

This case comes before this court for the third time. Defendant appealed following his conviction by a jury for the murder of his estranged wife, Tracy Hayden, and this court affirmed defendant's conviction. *People v. Hayden*, No. 5—91—0560 (1993) (unpublished order under Supreme Court Rule 23 (134 Ill. 2d R. 23)). Subsequently, defendant filed a postconviction petition in October 1994 and a supplemental postconviction petition in February 1995. The State moved to dismiss both petitions. The trial court denied the State's mo-

tion to dismiss and granted defendant a new trial. This court reversed the trial court's order granting defendant a new trial, finding that after the denial of the State's motion to dismiss, the State should have been allowed to answer the petitions. We remanded this case for further proceedings in conformance with section 122—5 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—5 (West 1992)). *People v. Hayden*, 288 Ill. App. 3d 1076 (1997).

On remand, defendant filed an amended and a supplemental postconviction petition. Defendant attached an affidavit to the amended postconviction petition. The State filed motions to dismiss and answers to defendant's postconviction petitions. On August 2, 2000, the trial court dismissed defendant's postconviction petitions without conducting an evidentiary hearing.

On appeal, defendant contends that the trial court erred for the following reasons in denying his postconviction petitions without an evidentiary hearing:

1. The court denied his constitutional right to a public trial when it excluded his siblings from the courtroom during *voir dire*, trial counsel was ineffective for failing to object to the closure, and appellate counsel was ineffective for not raising trial counsel's failure.

2. The trial judge erred in failing to recuse himself from the trial *sua sponte*, trial counsel was ineffective for failing to make a timely motion to substitute the judge, and appellate counsel was ineffective for not raising the issue.

3. The Belleville police department destroyed exculpatory evidence, *i.e.*, fingerprint evidence on the victim's vehicle and evidence pertaining to defendant's bicycle, in bad faith, and trial counsel was ineffective for failing to object to the destruction of the exculpatory evidence.

4. The State spoliated evidence essential to his defense by wiping the knife used in the murder clean of fingerprints and blood, trial counsel was ineffective for failing to make a timely objection to the spoliation of the evidence, and appellate counsel was ineffective for not raising trial counsel's failure to raise the issue and for not raising the issue on appeal.

5. A hearing should have been conducted concerning defendant's fitness to stand trial because it was apparent from the record that defendant was ingesting psychotropic medication at the trial and sentencing, trial counsel was ineffective for failing to request a fitness hearing, and appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness.

6. Trial counsel was ineffective because he withheld exculpatory evidence from defendant during the trial.

7. Trial counsel was ineffective for not filing a motion to

reconsider sentence, and appellate counsel was ineffective for failing to raise trial counsel's failure.

## FACTS

The facts adduced at the trial are as follows. Defendant and his wife Tracy separated in late May 1990. Tracy took the couple's two children with her. On the evening of July 27, 1990, Tracy went to Dundee's, a bar, where she met 10 to 12 other women for a mini reunion. That evening, defendant was riding his bicycle in the area. Defendant saw James Fogarty, Tracy's brother, and asked Fogarty for a ride to a park. Defendant's remarks to Fogarty raised the inference that defendant was looking for Tracy. Defendant ultimately went to Dundee's, where he saw Tracy, but he did not approach her. Tracy and the women with her prepared to leave Dundee's. Defendant left Dundee's before them, so Tracy stayed, not wanting to encounter defendant outside in the parking lot.

After leaving Dundee's, defendant went to a nearby bar, Crehan's, where he asked the barmaid, Judy Gamble, for a knife "to fix a tire." When Judy gave defendant a butter knife, he refused the knife, saying it was not sharp enough. Judy gave defendant a butcher knife, which was six to eight inches long and had a brown wooden handle.

Defendant rode his bicycle back to Dundee's. Defendant went inside and approached Tracy, who was sitting down, and asked her if he could talk to her. Tracy said no. Defendant pushed Tracy out of her chair onto the floor and jumped on top of her. Witnesses stated that defendant's arm went up and down several times. Tracy crawled away from defendant when several persons restrained him until the police arrived. Defendant was lying facedown on the floor when the police handcuffed and arrested him. When the police lifted defendant from the floor, there was a knife lying underneath him. The knife was taken by the police as evidence. Judy Gamble identified the knife as the one she had given defendant the night of Tracy's murder.

The evidence revealed that Tracy was dead when the police arrived at Dundee's. The pathologist testified that Tracy died of a knife wound to her chest because her aorta, the main blood vessel of the body, was pierced. The pathologist also stated that Tracy had a total of seven stab wounds to her body.

At the time of the crime, there were approximately 25 to 30 persons present at Dundee's. The two women with Tracy testified that they did not see a weapon in defendant's hand when he approached Tracy. Two employees of Dundee's and a patron also testified that they did not see a knife in defendant's hands when he approached Tracy; however, one of the witnesses thought that defendant had a

gun in his hand. All of the eyewitnesses testified that they saw defendant on top of Tracy and that it appeared that defendant was striking her.

A friend of defendant's, Ron Ulrich, testified that defendant came to his home on June 29, 1990, a month before Tracy's death. Defendant was upset about Tracy leaving him and taking the children. Defendant told Ulrich that Tracy was not letting him see the children and that he would kill her before she would "get away with that."

Mental health experts testified for both defendant and the State. Their testimony established that defendant suffers from major depression, panic disorder, alcohol dependence, drug abuse, and borderline personality disorder. The experts found that defendant has a mental illness but that he was sane at the time of the incident. Defendant's expert testified that he did not think defendant was able to form the intent to commit murder.

The jury found defendant guilty of first-degree murder. The court sentenced defendant to 55 years' imprisonment.

## DISCUSSION

### Standard of Review

■ The standard of review for a postconviction petition dismissed without conducting an evidentiary hearing is *de novo* plenary review. *People v. Coleman*, 183 Ill. 2d 366 (1998). An evidentiary hearing for a postconviction petition is not a matter of right but is only required when a petitioner makes a substantial showing of a violation of constitutional rights. *Coleman*, 183 Ill. 2d at 381. A petitioner's allegations in the postconviction petition must be supported by the record in the case or by accompanying affidavits; however, nonfactual and nonspecific assertions that amount to conclusions are not sufficient to require a hearing under the Act. *Coleman*, 183 Ill. 2d at 381. Where the allegations in a postconviction petition are contradicted by the trial record, the dismissal of the petition is proper. *Coleman*, 183 Ill. 2d at 382. Well-pleaded facts that are not positively rebutted by the record are to be taken as true at the dismissal stage of a postconviction proceeding. *Coleman*, 183 Ill. 2d at 385.

■ A postconviction petition is a collateral attack on a judgment, enabling the defendant to challenge a conviction or sentence for a violation of constitutional rights. *People v. Johnson*, 183 Ill. 2d 176 (1998). Issues considered on direct appeal are *res judicata* regarding matters actually decided, and issues that could have been raised in an earlier proceeding, but were not, are considered waived. *Johnson*, 183 Ill. 2d at 186.

■ Many of defendant's issues claim the ineffective assistance of

trial counsel and appellate counsel. To succeed on an ineffective-assistance-of-counsel claim, a defendant must show that his counsel was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *People v. Richardson*, 189 Ill. 2d 401 (2000). To show a deficiency, a defendant must overcome the strong presumption that counsel's action or inaction was the product of sound trial strategy. *Richardson*, 189 Ill. 2d at 411. To show prejudice, a defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Richardson*, 189 Ill. 2d at 411. Both prongs of the *Strickland* test, deficiency and prejudice, must be shown to establish the ineffective assistance of counsel, and the failure to establish either of these will be fatal to a defendant's claim. *Richardson*, 189 Ill. 2d at 411.

The *Strickland* test is also applied to test the adequacy of appellate counsel. *Richardson*, 189 Ill. 2d at 412. Effective assistance of counsel does not mandate that appellate counsel raise every conceivable argument, and appellate counsel is not constitutionally deficient unless patently wrong. *Richardson*, 189 Ill. 2d at 412. Appellate counsel is not ineffective if he does not argue a waived issue (*Richardson*, 189 Ill. 2d at 413) or where the underlying claim lacks merit (*Johnson*, 183 Ill. 2d at 187). With these principles in mind, we consider the issues raised on appeal.

### Right to a Public Trial

Defendant claims that he was denied his constitutional right to an open and public trial when the trial court excluded his family members from *voir dire*. Further, defendant argues that his counsel was ineffective because he failed to object to the closure and that appellate counsel was ineffective for not raising trial counsel's failure. We find that defendant waived the issue.

At the trial, the following colloquy took place prior to *voir dire*:

"MR. HAIDA [State's Attorney]: And during the voir dire, the—some of the interested family members have requested to sit in the courtroom. Do you have a problem with that?

MR. GOMRIC [defense counsel]: I would object to that because my people made the same request. I don't want to put the two of them together at this point. I would—

MR. HAIDA: I didn't encourage it, but they asked me if there was anything improper about it. I said I would run it by the Court. That's why I'm doing it now. Personally, I don't think it's a good idea, but they—I mean[,] I don't know how I can really stop them if you tell me they should be in there.

\* \* \*

THE COURT: *** I have attempted to set up this jury selection process so that I can accommodate people that want to be in there without infringing upon the jurors, but given the profile of this and the—the—I imagine there is serious animosity between these families. I'm not sure that it's a real good idea to have them in during the selection process, and I don't know if it may have a tendency to make the selection process a little more difficult. The jurors may be a little bit more comfortable coming in if we did not have both families in there. I'll exclude the families during the voir dire process. They will not be permitted in the courtroom.

\* \* \*

THE COURT: I'm not going to exclude reporters. Reporters can be in there if they want, but I'm excluding families. Is that sufficient? I don't know how extensive these families are."

From this colloquy, it is apparent that defense counsel agreed that defendant's family, as well as the victim's family, should be excluded from *voir dire*.

■ The constitutional right to a public trial under the sixth amendment (U.S. Const., amend. VI) extends to *voir dire. People v. Taylor*, 244 Ill. App. 3d 460 (1993). The right to a public trial belongs to the accused and not the public. *People v. Webb*, 267 Ill. App. 3d 954 (1994). While there is the presumption that all trials are open to the public, the presumption is not absolute because it must yield to an overriding interest that is specifically articulated. *Taylor*, 244 Ill. App. 3d at 468. Further, the right to a public trial can be waived by counsel (*Webb*, 267 Ill. App. 3d at 958) or by a defendant's failure to object to the closure at the trial (*People v. Lane*, 256 Ill. App. 3d 38 (1993)).

■ Here, counsel agreed to the partial closure, *i.e.*, only family members of defendant and the victim were excluded, because of the animosity between the two families. Counsel's agreement waived defendant's right to a public trial because he did not want both families together at that stage of the proceedings. The court agreed that it would make jury selection more difficult if both families were present. Although defendant claims that he did not agree to counsel's waiver, at no point in the trial proceedings or in a posttrial motion did defendant object to his counsel's waiver. Defendant waived his objection to the court's partial closure of *voir dire*. Because defendant waived this issue, appellate counsel was not ineffective for not raising the issue on appeal. See *Richardson*, 189 Ill. 2d at 413.

Defendant's claim of ineffective counsel based on the exclusion of his siblings from *voir dire* is not supported by the record. Further, defendant's affidavit attached to his postconviction petition contains no facts to support this claim. Accordingly, the court did not err in not

holding an evidentiary hearing on this issue. *Coleman*, 183 Ill. 2d at 381.

## Recusal of Trial Judge

Defendant contends that the trial judge erred in not recusing himself *sua sponte* from presiding over defendant's trial. Additionally, defendant claims that his trial counsel was ineffective for not filing a timely motion for substitution of judge and that his appellate counsel was ineffective for not raising the issue.

The first prong of defendant's argument, that the trial judge erred in not recusing himself *sua sponte* from presiding at his trial, is based upon defendant's interpretation of Canon 3(C)(1) of the Code of Judicial Conduct (188 Ill. 2d R. 63(C)(1)). Defendant supports his claim by asserting the following as evidence of the trial judge's bias and partiality: (1) that the judge's wife sat with Tracy's family during the hearing on defendant's motion for a change of venue, (2) that the judge's wife attended defendant's trial on a daily basis and sat with Tracy's family, (3) that the judge's wife called defense counsel on "the eve of sentencing" and told counsel that she would not have anything of benefit to say concerning defendant (apparently the judge's wife was subpoenaed by defense counsel for the sentencing hearing) and that she and "others" were disappointed in defense counsel's "antics," (4) that the judge failed to order a fitness evaluation and hearing for defendant, (5) that the judge explained that the severe sentence imposed upon defendant was necessary to protect defendant's children, and (6) that the trial process was "studded with discretionary decision-making by the trial judge" and that it is impossible to know whether any of those decisions were influenced by the judge's bias against defendant.

The court in *People v. McLain*, 226 Ill. App. 3d 892 (1992), noted that Canon 3 requires a judge to recuse himself when his participation might reasonably give rise to questions regarding his impartiality. *McLain*, 226 Ill. App. 3d at 902. However, the *McLain* court also noted that Canon 3 does not state or imply that the mere appearance of impropriety is, by itself, sufficient to find that a defendant is entitled to a new trial. *McLain*, 226 Ill. App. 3d at 902. Generally, when a trial judge has a personal, substantial pecuniary interest in reaching a conclusion against a party in a case, then the trial judge should recuse himself. *People v. Del Vecchio*, 129 Ill. 2d 265 (1989). "Another guiding principle on the issue of judicial bias is whether the case involves a possible temptation such that the average person, acting as judge, could not hold the balance nice, clear[,] and true between the State and the accused." *Del Vecchio*, 129 Ill. 2d at

275. The supreme court in *Del Vecchio* also stated, "[O]nly under the most extreme cases would disqualification on the basis of bias or prejudice be constitutionally required." *Del Vecchio*, 129 Ill. 2d at 275.

■ In the instant case, nothing alleged by defendant established the trial judge's actual prejudice or bias against defendant. Nor do defendant's allegations raise the mere appearance of impropriety, because most of the bias alleged by defendant is the judge's wife's bias and not the judge's bias. The only specific allegations concerning the trial judge's bias are the trial judge's failure to order a fitness evaluation and hearing for defendant and the judge's statements at sentencing. As will be discussed later, the trial court's action concerning defendant's fitness evaluation and hearing was proper, so this allegation does not support defendant's assertion. Further, the record reflects that, at sentencing, the trial court considered aggravating factors other than the impact a sentence would have on defendant's children. The court stated at sentencing that defendant's sentence was needed to protect society, which included defendant's children. The court's statement concerning defendant's children was brief. The record reflects that the trial court considered proper aggravating factors when imposing sentence and that the sentence was within the range allowed by statute. Even if the court's remarks were improper, which we do not so find, a remark made in passing is not prejudicial to a defendant so that a new sentencing hearing is required. *People v. Westbrook*, 262 Ill. App. 3d 836 (1992). Defendant's allegation concerning the judge's statement at sentencing as evidence of the judge's prejudice and bias against him is not supported by the record.

Defendant's allegations to support his assertion that the trial judge should have *sua sponte* recused himself are not extreme or factually defined enough to constitutionally require the disqualification of the trial judge for bias or prejudice.

■ Defendant asserts that his trial counsel was ineffective for failing to timely move for a substitution of judge and that appellate counsel was ineffective for failing to raise the issue. We note that the issue of the court's denial of defendant's motion for a substitution of judge because it was untimely was raised on direct appeal. *Hayden*, order at 20. Because only the timeliness of the motion was considered on appeal and not the merits of the motion, this issue is not *res judicata* for purposes of this appeal.

Prior to defendant's trial, defense counsel and the State's Attorney met with the judge in chambers to discuss a letter sent to defense counsel concerning defendant's father's request that defense counsel move for a substitution of the judge. In defendant's father's letter to defense counsel, dated December 24, 1990, defendant's father

raised the following as "definite conflicts" involving the judge: that the judge's wife, a "close friend of [Tracy's] family," attended the hearing on the request for a change of venue; that the judge discussed defendant's case with a witness, Ron Vitale; that the judge plays softball and racquetball and has breakfast often with Ron Vitale; that the judge's mother- and father-in-law are friends of defendant's parents; that the judge's mother-in-law had a bridal shower for defendant's sister; and that the judge's wife discussed defendant's trial with Tom Mabry, one of her coworkers, in early *January* (which is after the date of defendant's father's letter). Defendant's father sent defense counsel a second letter on April 6, 1991, asking counsel again to move for a substitution of the judge. In the April 1991 letter, defendant's father asserted no basis for the motion. Defendant claims that since defense counsel knew of the judge's conflicts prior to the trial, his counsel was ineffective for not filing a motion to substitute the judge earlier than just prior to sentencing.

Section 114—5(d) of the Code of Criminal Procedure of 1963 (Code) provides for the substitution of a judge for cause. 725 ILCS 5/114—5(d) (West 2000) (formerly Ill. Rev. Stat. 1991, ch. 38, par. 114—5(d)). A defendant has no absolute right to a substitution of a judge for cause. *People v. Wright*, 234 Ill. App. 3d 880 (1992). It is the defendant's burden to establish actual prejudice. *McLain*, 226 Ill. App. 3d at 902. The defendant must show that bias or prejudice stemmed from an extrajudicial source and that the bias produced an opinion on the merits by the judge that was based on other than what the judge had learned from his participation in the case. *Wright*, 234 Ill. App. 3d at 898. A trial judge is in the best position to determine whether he has become prejudiced. *Wright*, 234 Ill. App. 3d at 898.

As noted previously, defense counsel and the State's Attorney met with the trial judge in chambers prior to defendant's trial to discuss defendant's father's letter of December 24, 1990. Defense counsel did not file a motion pursuant to section 114—5 at that time but simply discussed the matter with opposing counsel and the judge. Defendant's father's letters were the only basis for a motion to substitute the judge for cause prior to the trial. These letters were insufficient to provide a basis for a substitution for cause, because there is no allegation of actual prejudice by the judge. The December 1990 letter asserts allegations about the judge's wife's relationship with Tracy's family, but there is no affidavit from anyone other than defendant and no evidence contained in the record that shows that the judge was prejudiced against defendant. The allegations concerning the judge and Ron Vitale are not substantiated by an affidavit by Ron Vitale, state no facts showing actual prejudice, and are mere conjecture. Defendant's

father's letter also establishes that the judge's extended family had a friendly relationship with defendant's extended family. It is clear that the judge was familiar, on some level, with both Tracy's family and defendant's family, but such familiarity does not establish actual prejudice for either side. Defendant's father's assertion that the judge's wife talked to a coworker about defendant's case has no bearing on whether the judge was prejudiced against defendant. The judge's wife is a different individual from the judge, and we will not ascribe another person's feelings, actions, or relationship, without more, to find actual prejudice on the part of the judge.

Defendant points to no particular ruling on the part of the judge that shows that the judge had actual bias or prejudice towards defendant. Because nothing of record shows that defense counsel had proof of actual prejudice on the part of the judge either prior to or during defendant's trial, defense counsel was not ineffective for failing to move to substitute the judge either before or during the trial. Defendant was not prejudiced. Defendant's claim of ineffective assistance of counsel fails because it is not supported by the record. See *Coleman*, 183 Ill. 2d at 382. Because trial counsel was not ineffective for not moving in a more timely manner to substitute the judge, it follows that appellate counsel was not ineffective for not raising this issue. Because defendant has not met his burden of showing actual prejudice by the judge, the trial court did not err in denying defendant an evidentiary hearing on the issue concerning a recusal and substitution of the judge. See *Coleman*, 183 Ill. 2d at 381.

### Destruction of Exculpatory Evidence by Police

Defendant asserts that he was denied due process of law because the Belleville police department acted in bad faith when it destroyed exculpatory evidence. Specifically, defendant claims that the police department removed his bicycle from its location near Tracy's car the night of Tracy's murder without documenting the location. Defendant also alleged that fingerprint evidence from Tracy's vehicle was not preserved. Defendant's argument in his brief only concerns his bicycle. Because defendant presents no argument concerning the fingerprints on Tracy's car, pursuant to Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)), this court need not consider this aspect of the issue. See *People v. Hartfield*, 232 Ill. App. 3d 198 (1992).

Defendant contends that the location of his bicycle would support his version of events, *i.e.*, that he was angry with Tracy that night, that he had obtained the knife with the "intent" of slashing Tracy's tires, that he was known for his proclivity to slash people's tires when

he was angry, that he had no intent to stab Tracy when he entered the bar, that he approached her and she "lunged" at him and grabbed the knife, and that in the ensuing struggle, Tracy was wounded. Therefore, defendant claims that the failure to photograph his bicycle near Tracy's car or to document the location of the bicycle in any police reports resulted in the destruction of exculpatory evidence. Again, defendant contends that his trial counsel was ineffective for not raising this issue at the trial or in a posttrial motion and that his appellate counsel was ineffective for not raising his trial counsel's failure.

■ Defendant's claim is not supported by the record. Although defendant claims that the evidence concerning his bicycle would have supported his claim that he intended to slash Tracy's tires, there was no evidence presented showing that Tracy's tires had been slashed, and defendant's assertion in his postconviction petition is that he abandoned this intent when he arrived at Dundee's. It is irrelevant what defendant intended but did not do. The crucial fact is what defendant actually did: he stabbed Tracy in Dundee's in front of 25 to 30 witnesses. Further, although defendant claims that Tracy "lunged" at him and that during the struggle she was stabbed, the record does not support his version of events. Witnesses testified that Tracy was sitting in a chair when defendant approached her. None of the witnesses testified that Tracy "lunged" at defendant. All of the witnesses testified that defendant pushed Tracy to the floor from her chair. The witnesses also testified that defendant was on top of Tracy and that his arm was moving in an up-and-down motion indicative of defendant striking Tracy. Even if defendant had presented his version of events, such a version can best be described as incredible against the numerous eyewitnesses who testified otherwise.

Defendant's claim is not supported by the evidence in the trial record, and defendant suffered no prejudice. Thus, his counsel was not ineffective for failing to raise the theory at trial, and defendant's claim fails. See *Richardson*, 189 Ill. 2d at 411. Similarly, because trial counsel was not ineffective for failing to object at the trial or raising the issue in a posttrial motion, appellate counsel was not ineffective. Because defendant's claim is not supported by the trial record or by affidavit, the trial court properly dismissed this claim without conducting an evidentiary hearing. See *Coleman*, 183 Ill. 2d at 381.

## Spoliation of Evidence

■ Similarly, defendant claims that the State spoliated evidence essential to his defense, *i.e.*, the knife presented at the trial was wiped clean of fingerprints and blood. Additionally, defendant argues that his trial counsel was ineffective for not making a timely objection to the

spoliation of the evidence and that appellate counsel was ineffective on direct appeal for not raising trial counsel's failure.

The evidence that defendant claims supports his spoliation argument is as follows. A crime scene report dated July 27, 1990, states that the knife recovered from the scene appeared to have a "small amount of reddish stain" on the blade. The crime laboratory reports concerning the knife indicated that no detectable blood or latent fingerprints suitable for comparison had been found on the knife. Because the crime lab found no detectable evidence on the knife and the crime scene report indicated there was a small "reddish" stain on the blade, defendant assumes that the State wiped the blade clean.

At the trial, defense counsel questioned the police officer in charge of the knife, Officer Rokita, whether the police had washed the knife before submitting it to the crime lab. Officer Rokita denied such an allegation. Defense counsel also called Dennis Aubuchon, the State crime lab's forensic examiner who analyzed the knife, to testify that he had found no blood on the knife. Lastly, defense counsel objected to the admission of the knife into evidence and to the testimony concerning the knife, on the basis that there was no conclusive evidence that the knife was the murder weapon. Trial counsel exerted every effort feasible to prevent the admission of the knife into evidence. Further, the jury was aware that there was no incriminating evidence on the knife itself, but it still resolved the matter against defendant.

However, regardless of the crime lab's test results, the evidence was unrebutted that defendant had obtained a knife from Crehan's the night of the murder; that when he was lifted from the floor after stabbing Tracy, there was a knife underneath him; that the knife was identified at the trial by Judy Gamble, the barmaid at Crehan's, as the knife given to defendant the night of the crime; and that there was a proper chain of custody of the knife by the police. Again, defendant's claim in his postconviction petition is not supported by the record or by his affidavit. Trial counsel was not ineffective for not objecting to the spoliation of evidence or for failing to raise the issue in a posttrial motion, because the evidence would not support such a motion. Thus, defendant suffered no prejudice. See *Richardson*, 189 Ill. 2d at 411. Similarly, appellate counsel was not ineffective for failing to raise this issue on appeal, because the issue would have been without merit. The trial court did not err in failing to conduct an evidentiary hearing on this issue, because the claim was not supported by the record or an affidavit. See *Coleman*, 183 Ill. 2d at 381.

### Failure to Conduct a Fitness Evaluation and Hearing

Defendant claims that the trial court should have ordered a

fitness evaluation and hearing to determine his competence to stand trial because the trial record is replete with evidence that he was taking psychotropic medication both at the trial and at sentencing. Defendant asserts that if a timely fitness hearing had been conducted, it would have resulted in a finding that he was not competent to stand trial. Defendant also contends that his trial counsel was ineffective for not filing a motion for a fitness hearing to determine defendant's competence to stand trial and that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness.

As defendant asserts, the record reflects that the court, defense counsel, and the State were aware that defendant was taking psychotropic medications at the time of the trial and sentencing and that defendant began taking these medications soon after he was placed in jail. Defendant stated in his affidavit attached to his postconviction petition that because of these medications he "was extremely sleepy and had geat [sic] difficulty concentrating, forming thoughts of [his] own, and comprehending what others said to [him]." Defendant also cites to Monsignor Schwaegel's testimony that when he visited defendant, defendant was sometimes so groggy that communication with him was impossible.

Section 104—21(a) of the Code concerns taking psychotropic medications during the trial and the sentencing. 725 ILCS·5/104—21(a) (West 2000). At the time of defendant's trial in 1991, section 104—21(a) stated, in pertinent part:

> "(a) A defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." Ill. Rev. Stat. 1991, ch. 38, par. 104—21(a).

The current version, applicable at the time of defendant's postconviction petition, states:

> "(a) A defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104—21(a) (West 2000).

The change in the statute reflects the progress of the case law concerning this statute.

This issue is governed by the holding in *People v. Mitchell*, 189 Ill. 2d 312 (2000). In *Mitchell*, the supreme court determined that its prior holdings concerning a section 104—21(a) fitness hearing were erroneous. Specifically, the supreme court stated that the holdings in *People v. Nitz*, 173 Ill. 2d 151 (1996), *People v. Brandon*, 162 Ill. 2d 450 (1994), and *People v. Gevas*, 166 Ill. 2d 461 (1995), that the taking of medications was equated with a *bona fide* doubt of a defendant's fitness and that a defendant was deprived of due process if he did not

receive a fitness hearing when it was shown that he was taking psychotropic medication, were erroneous. *Mitchell*, 189 Ill. 2d at 330. The supreme court then held that section 104—21(a) confers simply a statutory right and that the failure to conduct a fitness hearing simply because a defendant was taking psychotropic medications was not a violation of due process. *Mitchell*, 189 Ill. 2d at 329. Thus, the failure to conduct a fitness hearing because defendant was taking psychotropic medications did not violate his right to due process as he alleged in his postconviction petition. See *Mitchell*, 189 Ill. 2d at 329.

However, the ineffective assistance of counsel is a constitutional issue that can be raised in a postconviction petition. As in *Mitchell*, at the time of defendant's trial, there was no case law that established that a court's failure to *sua sponte* order a section 104—21(a) fitness hearing was a violation of defendant's due process rights. See *Mitchell*, 189 Ill. 2d at 332. Therefore, the trial court had no basis for *sua sponte* ordering a fitness hearing, and defendant's due process rights were not violated by the trial court's failure. Further, the court in *Mitchell* held that appellate counsel would have had no basis to raise the issue on appeal and that to do so would have been meritless, so appellate counsel was not ineffective for failing to raise this issue on appeal. *Mitchell*, 189 Ill. 2d at 333. The same is true for defendant in the case *sub judice*.

However, as in *Mitchell*, we must still consider whether trial counsel was ineffective for failing to move for a fitness hearing under section 104—21(a). To prevail on an ineffective-assistance-of-counsel claim for failing to file a motion for a fitness hearing, *i.e.*, to show prejudice, it must be shown that if the defendant had received a hearing to which he was entitled, he would have been found unfit to stand trial. *Mitchell*, 189 Ill. 2d at 334.

Here, the trial record does not support a finding that even if defendant had received a hearing concerning his fitness, he would have been found to be unfit. In his report, Dr. Cuneo, defendant's expert, indicates that at the time of his five interviews with defendant, defendant was oriented to person, time, and place, *i.e.*, he knew who he was, knew where he was, and could correctly identify the day, month, and year. According to Dr. Cuneo, while in jail defendant reported hearing his children's voices but knew the voices were not real. Dr. Cuneo determined that defendant had impaired judgment at the time of the offense but that defendant was able to conform his conduct to the requirements of the law. Dr. Cuneo further stated in his report, "[Defendant] did have the ability to know right from wrong and could have controlled his behavior if he so desired." Dr. Cuneo did not express an opinion on whether defendant was fit to stand trial.

In his report, Dr. Dinwiddie indicated that it was his opinion that defendant was competent to stand trial and was not insane at the time of the crime. Dr. Dinwiddie's report stated that defendant understood that he was charged with first-degree murder; that the possible penalties he could receive were from 20 years' to life imprisonment or possibly the death penalty; that defendant understood the roles of the people in the courtroom (*i.e.*, the judge, the State's Attorney, defense counsel, and the jury); that defendant knew that witnesses could be called to testify; that defendant knew his right to not incriminate himself; that he knew that he could plead guilty, not guilty, or not guilty by reason of insanity; and that defendant should be able to assist in his own defense.

Whenever defendant was questioned in court by the trial judge, defendant's answers appeared coherent. The judge, prior to the trial, found there was no *bona fide* doubt of defendant's fitness. Given the above evidence, nothing in the record supports a finding that defendant was unfit to stand trial. Thus, defense counsel was not ineffective for failing to move for a fitness hearing pursuant to section 104—21(a), because defendant suffered no prejudice. See *Richardson*, 189 Ill. 2d at 411. Similarly, appellate counsel was not ineffective for failing to raise the issue on appeal. See *Johnson*, 183 Ill. 2d at 187. Because the record does not support defendant's claim that his constitutional rights were violated by a failure to have a fitness hearing because he was taking psychotropic medications, the trial court did not err in failing to conduct an evidentiary hearing on this issue. See *Coleman*, 183 Ill. 2d at 381.

## Trial Counsel Withheld Evidence

Defendant claims that his trial counsel was ineffective because counsel withheld exculpatory evidence from him during the court proceedings. Specifically, defendant contends that trial counsel withheld the crime scene report dated July 27, 1990, which stated that the knife had a "small amount of reddish stain"; an evidence receipt dated August 3, 1990, which had questions on it about what the forensic examination should be; the forensic examiners' reports of August 6, 1990, and October 11, 1990, revealing their test results concerning the knife; and three April 4, 1991, photographs of defendant's bicycle.

If the prejudice prong of the two-prong test concerning ineffective assistance of counsel is not met, the defendant's claim that counsel was ineffective fails. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069. The trial evidence against defendant was overwhelming. The outcome of defendant's trial would not have been

different. Further, trial counsel questioned witnesses thoroughly concerning the knife submitted into evidence. Defendant has not shown prejudice by counsel's alleged withholding of the stated evidence. Thus, defendant's claim that counsel was ineffective for allegedly withholding evidence from defendant fails. See *Richardson*, 189 Ill. 2d at 411.

### Motion to Reconsider Sentence

Defendant also argues that his counsel was ineffective for failing to file a motion to reconsider sentence and that his appellate counsel was ineffective for failing to raise trial counsel's failure as an issue on direct appeal.

In *People v. Reed*, 282 Ill. App. 3d 278 (1996), *aff'd*, 177 Ill. 2d 389 (1997), the appellate court noted that the statute requiring a postsentencing motion to preserve sentencing errors did not become effective until August 1993. *Reed*, 282 Ill. App. 3d at 280. In the instant case, defendant was sentenced in June 1991, before the statute changed. Therefore, because a postsentencing motion was not required to preserve sentencing issues at the time defendant was sentenced, it cannot be concluded that trial counsel was ineffective for not filing a motion to reconsider sentence. Because sentencing issues were not waived or lost by trial counsel's alleged failure, defendant suffered no prejudice. With no showing of prejudice, defendant's ineffective-assistance-of-counsel claim fails. See *Richardson*, 189 Ill. 2d at 411.

Defendant also claims that appellate counsel was ineffective for not raising as an issue on appeal trial counsel's failure to file a motion to reconsider sentence. Since trial counsel was not ineffective, it follows that appellate counsel was not ineffective for failing to raise an issue of trial counsel's ineffectiveness.

Because defendant's claims of ineffective assistance of trial counsel and appellate counsel have no merit, the trial court did not err in not conducting an evidentiary hearing on this issue. See *Coleman*, 183 Ill. 2d at 381.

### CONCLUSION

For the foregoing reasons, the judgment of the circuit court of St. Clair County dismissing defendant's postconviction petition without an evidentiary hearing is affirmed.

Affirmed.

WELCH and GOLDENHERSH, JJ., concur.